UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BENTLEY LAND HOLDINGS, LLC, | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00057-Z-BR |
| | § | |
| ATLANTIC CASUALTY | § | |
| INSURANCE COMPANY, | § | |
|    *Defendant.* | § | |

**DEFENDANT ATLANTIC CASUALTY INSURANCE COMPANY'S
ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE U.S. DISTRICT JUDGE MATTHEW J. KACSMARYK:

Defendant Atlantic Casualty Insurance Company (Atlantic Casualty) files its Answer to Bentley Land Holdings, LLC's Original Complaint, and in support, respectfully shows the Court the following:

**I.
ATLANTIC CASUALTY'S ANSWER**

For each paragraph below, Atlantic Casualty restates Plaintiff's allegations and responds accordingly.

**Parties**

1.    "Plaintiff, Bentley Land Holdings, LLC ("Bentley"), is a limited liability company with one member, Camron Munger. Munger is a Texas citizen."

> *Answer: Atlantic Casualty admits Bentley is a limited liability company doing business in Texas. Atlantic Casualty further admits that Camron Munger is a Texas citizen.*

2.    "Defendant, Atlantic Casualty Insurance Company ("Atlantic Casualty"), is a North Carolina corporation with its principal place of business in Goldsboro, North

Carolina.  It can be served with process by serving Angela B. Grady, Vice President of Claims, Atlantic Casualty Insurance Company, 400 Commerce Court, Goldsboro, NC 27534."

> *Answer:  Atlantic Casualty admits that it is a North Carolina corporation with its principal place of business in Goldsboro, North Carolina.*

## Jurisdiction and Venue

3.     "This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1). Atlantic Casualty is a citizen of North Carolina. Bentley is a citizen of Texas. An actual controversy exists which arises from damage to Bentley's real and personal property in Potter and Randall Counties, Texas. The matter in controversy exceeds $75,000, exclusive of interest and costs."

> *Answer:  Atlantic Casualty admits that the United States District Court for the Northern District of Texas-Amarillo Division has jurisdiction over this cause of action based on diversity of citizenship, amount in controversy, and because the property at issue is located within the territory of the United States District Court for the Northern District of Texas-Amarillo Division.*

4.     "Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred in this Court's judicial district and the subject property is located in this Court's judicial district."

> *Answer:  Atlantic Casualty admits that the United States District Court for the Northern District of Texas-Amarillo Division has jurisdiction over this cause of action based on diversity of citizenship, amount in controversy, and because the property at issue is located within the territory of the United States District Court for the Northern District of Texas-Amarillo Division.*

## A. The Policy

5.    "Bentley and Atlantic Casualty entered into an insurance contract, identified as Policy No. M226000662-0, to insure the real and personal property located at 4523 Canyon Drive, Amarillo, Texas 79110 and 8401 SE 3rd Ave., Amarillo, Texas 79118 (the "Properties")."

> *Answer: Atlantic Casualty admits the allegations in paragraph 5.*

6.    "The Policy provided for replacement cost coverage and provided for broad form coverage including "Windstorm or Hail.""

> *Answer: Atlantic Casualty admits the allegations in paragraph 6, subject to the Policy's terms, conditions and exclusions for any specific claim.*

## B. The Loss and Adjustment

7.    "On or about June 19, 2020, the Properties were damaged by a catastrophic hail event which caused covered damage to the Building and Personal Property. Bentley timely notified Atlantic Casualty of the loss and otherwise complied with all conditions precedent."

> *Answer: Atlantic Casualty denies the allegations in paragraph 7.*

8.    "Atlantic Casualty assigned independent adjuster Rick Doshier with Cross Claims Service, Inc. to inspect the Properties. Doshier identified hail caused damage to the roof surfacing and HVAC units at both Properties. In a September 1, 2021 letter, Atlantic Casualty admitted coverage for hail damage to the HVAC components. However, without hiring a competent expert or disclosing the qualifications of Mr. Doshier to perform metallurgical or engineering analysis, Atlantic Casualty relied upon his opinion that the damage was "cosmetic" to exclude payment for hail damage to the roofing surfaces under a policy exclusion, the "Roof Surfacing Limitation Endorsement." Prior to denying coverage for the hail damage to the roof surfacing, Atlantic Casualty performed an

unreasonable investigation, and its explanation of its coverage decision is patently unreasonable in violation of the Texas Insurance Code. Atlantic Casualty issued a net payment of $3,340.52 on 4523 Canyon Drive and $5,495.62 on 8401 SE 3rd."

> *Answer: Atlantic Casualty admits it assigned Rick Doshier with Cross Claims Services, Inc. to inspect the properties. Atlantic Casualty denies the remainder of the allegations in paragraph 8.*

### Facts

9.   "After denying the claim, Atlantic Casualty for the first time retained an engineer. The engineer works for a company, Vertex, that routinely performs superficial claims evaluations for insurance companies to use in support of coverage denials. Eliah Kim with Vertex issued a report dated February 22, 2022, in which he expressed his conclusions regarding the Properties. Kim states, "the 4523 Building did not sustain fractures in the PVC membrane…" and the hail caused dents on the 8401 Building "did not cause stripping of paint, fractures, or punctures on the metal roof panels." Importantly, these conclusions do not meet Defendant's burden of proof to show the applicability of the Roof Surfacing Limitation Endorsement. That is because the plain language of the endorsement states:

> We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

Federal courts in the Northern District of Texas have excluded expert reports which attempt to rely upon a definition of damage that is different than the exact language of the

exclusion in the Policy. *Collins v. Safeco Ins. Co. of Indiana*, No. 3:18-CV-01788-X, 2020 WL 95488, at *7 (N.D. Tex. 2020). These courts have also held that it is improper for an insurer to broaden the applicability of a cosmetic damage exclusion by narrowing what constitutes "functional" damage by using an extracontractual definition. Id; *See also Dragoo v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-984-O, 2018 WL 1536639, at *3 (N.D. Tex. Jan. 5, 2018) (refusing to adopt the insurer's argument that the exclusion was limited to the roof's inability to shed water). Because Kim did not define the nature of the hail damage in the terms expressed by the Policy exclusion, his report serves as no evidence in support of Atlantic Casualty's burden to show the applicability of the exclusion. Reliance upon Kim's report was, therefore, another example of Atlantic Casualty's unreasonable investigation."

*Answer: Atlantic Casualty denies the allegations in paragraph 9.*

10.    "On March 17, 2022, Atlantic Casualty agreed to participate in the contractual appraisal process to determine the amount of loss. Plaintiff was required to invoke appraisal because Atlantic Casualty relied upon incorrect statements from Kim that, "hail impacts has not occurred on the roof surface of the 4523 Building, or if they had occurred, to a limited or minimal extent only." The appraisers, Rickey Conradt and Matt Bonnie, both agreed to appoint Bobby Meyers as the umpire."

*Answer:  Atlantic Casualty admits that it agreed to participate in the contractual appraisal process, and further agrees the appraisers were Rickey Conradt and Matt Bonine, who agreed to appoint Bobby Meyers as the umpire.  Atlantic Casualty denies the remainder of allegations in paragraph 10.*

11.    "On or about June 10, 2022, two members of the appraisal panel, Rickey Conradt and Bobby Meyers, each signed an appraisal award for the Properties. The appraisal award for the 4523 Property found "wind/hail" damage from a "6/19/2020" date of loss in the

amount of $499,604.19. The appraisal award for the 8401 Property found "wind/hail" damage from a "6/19/2020" date of loss in the amount of $349,839.41."

*Answer: Atlantic Casualty denies the allegations in paragraph 11.*

12. "On September 22, 2022, counsel for Atlantic Casualty sent a letter refusing to pay the appraisal awards, citing the Vertex report for the incorrect proposition that Kim had identified that the hail damage fell within the "cosmetic" exclusion under the Policy."

*Answer: Atlantic Casualty denies the allegations in paragraph 12.*

13. "On October 17, 2022, counsel for Bentley served Atlantic Casualty with a Texas Insurance Code 542A compliant demand letter for payment of the amounts identified in the appraisal award. Atlantic Casualty responded by requesting an opportunity to send out a second engineer to perform an inspection."

*Answer: Atlantic Casualty admits it received a letter, but denies that it was statutorily compliant. Atlantic Casualty admits the remaining allegations in paragraph 13.*

14. "On January 30, 2022, counsel for Atlantic Casualty sent a letter revealing that Atlantic Casualty had received the report from its inspection, performed by Ezequiel Juarez Ocanas. Ocanas also works for a company, Rimkus, that routinely provides superficial bases for insurance companies to incorrectly deny claims. Without providing a copy of Ocanas's report, Atlantic Casualty included excerpts from the report in its letter that directly conflict with the findings of the appraisal panel. For example, Atlantic Casualty cites Ocanas's statement, "fractures were observed on what he categorized as section 3 of the roof, and that there was no physical evidence of damage to the PVC membrane on roof sections 1 and 2." Thus, Atlantic Casualty seeks to disregard and re-litigate the findings of the appraisal panel as to the amount of loss, in contravention of the Policy and Texas law, which both require that the appraisal award is binding on both the insured and insurer."

*Answer: Atlantic Casualty denies the allegations in paragraph 14.*

15.   "Atlantic Casualty has only issued payment for its "allocated amount" based upon Ocanas's findings, which are contradicted by both the binding appraisal award and Kim's findings. Without resolving any of the obvious conflicts, which independently requires a finding of a knowingly unreasonable investigation, Atlantic Casualty sent another letter, dated March 29, 2023, in which it refused to issue additional payment. The letter incorrectly asserts "it is the insured's burden to allocate [the damages]." However, Plaintiff has already allocated the damages by presenting a valid copy of the appraisal award. Defendant has admitted the occurrence of a covered loss by issuing partial payment. Allocation does not mean re-litigation of issues properly resolved by the appraisal panel pursuant to the terms of the Policy, including the amount of loss caused by hail."

*Answer: Atlantic Casualty denies the allegations in paragraph 15.*

16.   "Atlantic Casualty has consistently refused to make meaningful attempts to investigate and resolve Bentley's insurance claim and has actively mischaracterized and manipulated evidence to misrepresent coverage, the value of the damage, and the cause of the damage, in violation of the Texas Insurance Code by, knowingly:

a. Failing to comply with internal policies for investigating claims;

b. Failing to train adjusters and employees in the proper methods of investigating and resolving claims disputes;

c. Performing a superficial, biased, and conclusory investigation of the damage in the claim;

d. Failing to adopt policies and procedures necessary to adequately investigate and resolve claims disputes;

e. Failing to resolve conflicts amongst experts relied upon prior to denying coverage;

f. Failing to competently apply the facts of the claim to Policy coverage for purposes of making a correct coverage decision;

g.  Failing to adopt policies and procedures necessary to adequately evaluate the qualifications of individuals upon whom the insurer would rely for purposes of investigating and resolving claims disputes;

h.  Failing to adopt policies and procedures necessary to adequately evaluate the veracity of opinions of third-parties;

i.  Attempting to settle the claim without performing a full and adequate investigation of the loss, including reliance upon knowingly incompetent, biased, and conflicted adjusters, and the failure to retain competent engineers, roofing contractors, remediation contractors, and other experts upon whom to rely for purposes of their investigation;

j.  Refusing to acknowledge oral and written reports provided by the insured and its agents identifying the cause and scope of damage;

k.  Wrongfully denying the claim under the applicable policy based upon an incorrect determination of material facts;

l.  Colluding with its adjusters and agents to misstate the cause, scope, and value of the damage;

m.  Unreasonably delaying settlement offers despite the insurer's liability becoming reasonably clear;

n.  Making untrue statements of material fact about the cause, scope, and value of the damages and how the damage applied to the Policy, including that the damage was not caused by a covered cause, that the damage was excluded, that Plaintiff was obligated to allocate amounts awarded by the appraisal panel, and that Defendant had completed a competent investigation;

o.  Failing within a reasonable time to affirm or deny coverage of a claim;

p. Failing to timely request all items, statements, and forms necessary to resolve the claim;

q. Failing within a reasonable time to request inspections, proofs of loss, or any other items the insurer believed necessary to evaluate the claim;

r. Failing to adopt and implement reasonable standards for the prompt investigation of claims under the policy;

s. Compelling Plaintiff to institute a lawsuit to recover an amount due under the policy by offering substantially less than the amount ultimately recovered; and

t. Failing to timely pay claims."

*Answer: Atlantic Casualty denies the allegations in paragraph 16.*

17. "Bentley provided to Atlantic Casualty all information necessary to pay the claim. All prerequisites under the Policy have been met."

*Answer: Atlantic Casualty denies the allegations in paragraph 17.*

18. "Atlantic Casualty continues to refuse to pay the amounts owed under the Policy in breach of the insurance contract and its common law and statutory obligations."

*Answer: Atlantic Casualty denies the allegations in paragraph 18.*

### Causes of Action

19. "**Breach of Contract**. Bentley incorporates the allegations in paragraphs 5-18 the same as if fully set forth herein. Bentley and Atlantic Casualty entered into an insurance contract to insure real and personal property against casualty loss. Bentley complied with all provisions of the insurance policy, including but not limited to payment of the premiums and timely notice of the loss. Atlantic Casualty breached a material provision of the contract by refusing to pay replacement cost damages and other damages owed under the Policy, after a Covered Cause of Loss. Bentley was damaged by Atlantic Casualty's breach."

*Answer: Atlantic Casualty denies the allegations in paragraph 19.*

20. "Violations of the Texas Insurance Code. Bentley incorporates the allegations in paragraphs 5-18 the same as if fully set forth herein. Defendant violated Texas Insurance Code Section 541.060(a). Specifically, Atlantic Casualty knowingly:

a. Made material misrepresentations regarding how the Policy applied to the causation facts of the damage observed and about the scope and extent of the investigation relied upon by Atlantic Casualty for its claims decision;

b. Failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

c. Failed to promptly provide a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of the claim;

d. Failed within the deadlines required under Texas Insurance Code chapter 542 to affirm coverage of the claim, request all items, statements, and forms, and pay the claim; and

e. Refused to pay the claim without conducting a reasonable investigation with respect to the claim."

*Answer: Atlantic Casualty denies the allegations in paragraph 20.*

21. "Atlantic Casualty's Unfair Settlement Practices caused direct damages, including the loss of Policy benefits and independent injuries in the form of damages in excess of Policy damages, to Plaintiff which would not have been incurred absent Defendant's knowing actions, omissions, delays and misrepresentations. The independent injuries are reflected by the increased costs of construction caused by price increases in roofing labor and materials occurring since the date of loss. Plaintiff is entitled to treble damages, court costs, and its attorney's fees pursuant to Texas Insurance Code section 541.152."

*Answer:  Atlantic Casualty denies the allegations in paragraph 21.*

22.   "Section  541.060(a)(1)  of  the  Texas  Insurance  Code.  Atlantic  Casualty's assertions in its March 29, 2023 coverage denial letter that Bentley had the obligation to allocate damages awarded by the appraisal panel for hail, after the panel already considered causation, and that Atlantic Casualty was not obligated to pay the amount of loss identified in  the  appraisal  award  because  its  engineer  disagreed  with  the  awarded  amounts,  are material misstatements as to Texas law and coverage under the Policy. Atlantic Casualty misrepresented material facts related to coverage to deny Bentley's claim and avoid liability for the damage. *See Albracht v. Indem. Ins. Co. of N. Am.*, No. 2:19-CV-72-Z-BR, 2019 WL 7040333, at *3 (N.D. Tex. Nov. 20, 2019) (Reno, M.J.), *supplemented*, No. 2:19-CV-72-Z-BR, 2019 WL 7040299 (N.D. Tex. Dec. 2, 2019), *report and recommendation adopted*, No. 2:19-CV-72-Z-BR,  2019  WL  7039749  (N.D.  Tex.  Dec.  20,  2019)  ("Albracht  has  also sufficiently  pleaded  the  'how'  or  'why.'  Hamilton's  investigation,  characterization  of material facts relating to coverage, and conclusions resulted in denial of Albracht's claim, which meant IIC was not required to pay anything on Albracht's claim.")."

*Answer:  Atlantic Casualty denies the allegations in paragraph 22.*

23.   "Atlantic  Casualty's  conduct  violates  section  541.060(a)(1)  of  the  Texas Insurance Code. See *DFWS, LLC v. Atl. Cas. Ins. Co.*, No. 3:20-CV-2499-G, 2020 WL 6946515, at *3 (N.D. Tex. Nov. 24, 2020) (concluding misrepresentations about the facts giving rise to a claim for coverage can constitute a violation of section 541.060(a)(1)); *Caruth v. Chubb Lloyd's Ins. Co. of Tex.*, No. 3:17-CV-2748-G, 2018 WL 3934030, at *3 (N.D. Tex. Aug. 16, 2018) (same); *Glidewell v. Safeco Ins. Co. of Indiana*, No. 3:15-CV-1099-G, 2015 WL 4868483, at *4–5 (N.D. Tex. Aug. 13, 2015) (same); *see also Albracht*, No. 2:19-CV-72-Z-BR, 2019 WL 7040333, at *3 (analyzing plaintiff's 541.060 claim that defendant

"mischaracterized the nature and coverage of the loss" by stating "covered property was not damaged by wind, and thus was not damaged by a covered cause of loss")."

*Answer: Atlantic Casualty denies the allegations in paragraph 23.*

24. "Section 541.060(a)(3) of the Texas Insurance Code. Without providing a complete copy of Ocanas's report, Atlantic Casualty relied upon his opinions to split the appraisal award into covered and non-covered damages in an effort to re-litigate the amount of loss. Atlantic Casualty's denial letter does not provide a reasonable explanation of the basis in the Policy for denying Bentley's claim because it does not provide support for the conclusion that the appraisal panel erred in determining the amount of loss caused by hail. Atlantic Casualty's conduct violates section 541.060(a)(3). *See Khan v. Allstate Fire & Cas. Ins. Co.*, No. Civ. A. H-11-2693, 2012 WL 1601302, at *8 (S.D. Tex. May 7, 2012) ("No false or misleading statements are necessary to make out a successful claim for relief [under section 541.060(a)(3)]; rather, the section creates liability for any inadequate explanation of an insurance claim denial, regardless of its truth or falsity.")."

*Answer: Atlantic Casualty denies the allegations in paragraph 24.*

25. "Sections 541.060(a)(2)(A) and 541.060(a)(7) of the Texas Insurance Code. Atlantic Casualty did not attempt to effectuate a prompt, fair, and equitable settlement, despite its reasonably clear liability, and refused to pay the claim without conducting a reasonable investigation. The appraisal panel determined the amount of loss. Despite Atlantic Casualty's burden of proof with regard to presenting valid evidence of the applicability of any exclusion under the Policy under Texas Insurance Code section 554.002, Atlantic Casualty presented no objective evidence that the appraisal award identified any damage from any cause of loss other than hail. Instead, Atlantic Casualty seeks to re-litigate the amount of loss in the guise of a "causation question" based solely upon contradictory findings from one of its engineers. Atlantic Casualty's obligation to pay

the appraisal award is absolute, and its failures to resolve the conflicts amongst its engineers and between its engineers and the appraisal award constitutes an unreasonable investigation."

*Answer: Atlantic Casualty denies the allegations in paragraph 25.*

26.   "Further, Atlantic Casualty committed unfair settlement practices in violation of Texas Insurance Code chapter 542, running from, at the latest, the date of the appraisal award on July 27, 2022, by:

a.   Failing to, within 15 days (or 30 days for a surplus-lines insurer) of the date of notice of the loss, request from Plaintiff all items, statements, and forms that the insurer reasonably believes would be required (542.055);

b.   Failing to affirm or deny coverage within 15 business days of receiving the information timely requested and identified in 542.055 (542.056);

c.   Failing to pay amounts due within 5 business days (or 20 business days for a surplus-lines insurer) of receipt of the information necessary to pay the claim (542.057); and

d.   Failing to pay the claim in whole within 75 days (90 days for a surplus-lines insurer) after notice of the claim (542.058)."

*Answer: Atlantic Casualty denies the allegations in paragraph 26.*

27.   "Under Texas Insurance Code 542.060, Bentley is entitled to a 10% per annum penalty on the entirety of the amounts due under the Policy, starting at the earliest violation of chapter 542 and running until the date that the amount of loss is paid, as well as its attorney's fees and court costs."

*Answer: Atlantic Casualty denies the allegations in paragraph 27.*

**Conditions Precedent**

28.   "All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant."

*Answer:  Atlantic Casualty denies the allegations in paragraph 28.*

### Attorney's Fees

29.   "*Attorney's Fees*. As a result of Atlantic Casualty's failure to pay the amounts due and owing under the policy, Bentley retained the undersigned counsel. Bentley agreed to pay the undersigned counsel a reasonable fee. Bentley is entitled to recover reasonable and necessary attorney's fees incurred in the prosecution of this action under Texas Civil Practice & Remedies Code chapter 38 and Texas Insurance Code sections 541.152 and 542.060."

*Answer: Atlantic Casualty denies the allegations in paragraph 29.*

### Jury Demand

30.   "*Jury Demand*. Bentley demands a jury."

*Answer:  This paragraph does not contain an allegation which must be admitted, denied, or otherwise responded to.*

### Prayer

31.   "Bentley prays that Atlantic Casualty be cited to appear and answer herein and upon hearing that Bentley recover judgment against Atlantic Casualty for the following:

   a.   Actual damages;

   b.   Attorney's fees for services rendered and that are allowed by law;

   c.   Post-judgment interest and costs;

   d.   Treble damages and exemplary damages as allowed by law;

   e.   Penalties and interest as allowed by law; and

   f.   All other relief to which Plaintiff may show itself entitled in law or in equity."

*Answer: Atlantic Casualty denies that Plaintiff is entitled to the relief requested in this paragraph.*

*Any allegation that has not been admitted, denied, or explained in Atlantic Casualty's preceding answers is hereby denied.*

## II.
## ATLANTIC CASUALTY'S AFFIRMATIVE DEFENSES

In addition to its answers above, Atlantic Casualty asserts the following affirmative defenses. Atlantic Casualty reserves the right to plead additional affirmative defenses as may be warranted. Any defense asserted below is pleaded in the alternative under the law, as necessary or appropriate. Under Federal Rule of Civil Procedure 10(c), Atlantic Casualty adopts by reference and fully incorporates for all purposes all coverage defenses asserted in its pleadings or motions.

1.    Atlantic Casualty issued insurance policy no. M226000662-0, effective June 10, 2020 to June 10, 2021, to Bentley Land Holdings LLC, Camron Munger (Policy).  Atlantic Casualty avers that the best evidence of the terms of the Policy are contained in the Policy and denies any allegations which may tend to enlarge, contradict or contravene the terms, conditions, exclusions, limitations of liability, as to the amount or otherwise, as therein provided.   Atlantic Casualty specifically pleads the terms, conditions, provisions, exclusions, and limitations of the Policy as if copied herein in full and places Bentley on full proof of any allegations seeking to infer liability by virtue of the existence of said Policy of insurance.

2.    *Damages occurred before effective date of Policy.* Bentley's reported damage is not covered because it commenced before the Policy went into effect on June 10, 2020:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Condition and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

…

H.  POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a.  During the policy period shown in the Declarations and

   b.  Within the coverage territory.

2. The coverage territory is:

   a.  The United States of America (including its territories and possessions);

   b.  Puerto Rico; and

   c.  Canada.

CP 00 90 07 88

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A.  Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

. . .

**G.  Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

. . .

**3.  Replacement Cost**

…

**b.**  This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.**  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.**  We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced;

and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

CP 00 10 10 12

3.  *Deductible exceeds damage.* In the event that the reported damage to the Properties was caused by a Covered Cause of Loss during the Policy period, there is still no coverage because the damage does not exceed Bentley's deductible:

**WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE**

. . .

**SCHEDULE**

| Premises Number | Building Number | Windstorm Or Hail Deductible Percentage – Enter 1 %, 2%, 3% or 5% and $1,000, $2,500 or $5,000 Minimum |
|---|---|---|
| 1 | 1 | **1 %** Subject to **$5,000 Minimum** |
| 2 | 1 | **1 %** Subject to **$5,000 Minimum** |
| | | **% Subject to $ Minimum** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) Of Insurance are shown in the Declarations.

**WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS**

**A.** Calculation Of The Deductible - All Policies

1. A Deductible is calculated separately for, and applies separately to:

   a. Each building that sustains loss or damage;

   b. The personal property at each building at which there is loss or damage to personal property;

      and

   c. Personal property in the open.

   If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.

2. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit reports.

   CPACI 03 21 02 17

4. *Cosmetic damage is not covered.* The Policy states:

### LIMITATIONS ON COVERAGE FOR ROOF SURFACING

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

CONDOMINIUM ASSOCIATION COVERAGE FORM

CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|
| 1 | 1 | B |
| 2 | 1 | B |
| Information required to complete this Schedule, if not shown above, will be shown in Declarations. | | |

A. The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule as being subject to this Paragraph **A.**:

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

**B.** The following applies with respect to loss or damage by **wind and/ or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.**:

We will not pay for cosmetic damage to roof surfacing caused by wind and/ or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/ or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**C.** For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

CP 10 36 10 12

5.  *No allocation.* Bentley bears the burden to allocate between covered and noncovered damages but has failed to do so. Additionally, Bentley cannot allocate between covered and noncovered damages. Alternatively, Bentley has not satisfied conditions precedent as a result of its failure and/or inability to allocate between covered and noncovered damages.

6.  The Policy contains a condition with regard to coverage in a case involving concealment, misrepresentation, or fraud:

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.  This Coverage Part;
2.  The Covered Property;
3.  Your interest in the Covered Property; or
4.  A claim under this Coverage Part.

CP 00 90 07 88

7.  The Policy states:

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

IL 00 17 11 98

8.    *Bona fide dispute.* Atlantic Casualty pleads that there is a bona fide dispute regarding liability on the contract and, therefore, there are no common-law or statutory bad-faith claims.

9.    The Policy is written on an RCV (replacement cost value) basis subject to certain conditions being met.  The Policy contains a co-insurance provision.

10.   The Policy states:

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

CP 00 90 07 88

11.   *Material Misrepresentation.* If material misrepresentations were made in the procurement of the Policy, Atlantic Casualty gives notice and pleads that any material misrepresentation voids or limits coverage under the Texas Insurance Code provisions or common law governing misrepresentations in the insurance procurement or claim processes.

12.   *Non-transference.* The Policy cannot be transferred and states that: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."

13.   *Assignment of Benefits.* "No benefits under this policy may be assigned or otherwise transferred, regardless of whether made before loss or after loss, and any such assignment or transfer is void. No causes of action arising from or based on this policy may be assigned, and any such assignment if void."

14.   *Concurrent causation.* Bentley bears the burden of proof to segregate damages and cannot segregate damages.  Atlantic Casualty pleads the doctrine of concurrent causation. Bentley has not and cannot meet its burden of segregating harm resulting from concurrent causes.  Bentley fails and failed to allocate between covered and excluded perils.  Failure to segregate is fatal to recovery.

15.   *Loss in progress and fortuity doctrines limit coverage.* Any losses or damages occurring or commencing to occur prior to the inception of the Policy are excluded from coverage, as a matter of law, pursuant to the insurance doctrines of Loss In Progress and Fortuity.  No coverage is owed because this damage in whole or part was a known loss or not a covered cause of loss. In addition, any storm damage after the Policy expired is not covered.  In addition, interior damages were not from a covered cause of loss or are otherwise excluded.

16.   Bentley's breach of contract claims are barred, in whole or in part, by the language of the Policy, including the terms, definitions, conditions, exclusions, endorsements, retentions, limits, and sub-limits contained within the Policy.

17.   Bentley cannot recover under a breach of contract claim because it cannot show that Atlantic Casualty breached any contract.

18.   Bentley cannot recover attorneys' fees under Chapter 38 of the Civil Practice and Remedies Code because Bentley cannot prove that Atlantic Casualty breached the parties' contract.

19.   *Credit/offset.* Even if coverage is found, which is denied, Bentley's recovery is limited to any amounts for which Bentley is responsible and Atlantic Casualty is entitled to a credit/offset for all amounts already paid by any party or entity to Bentley for the damages that are the subject of this lawsuit.

20.   *No damages sustained.*   Atlantic Casualty neither had nor breached a contractual duty or obligation to Bentley under the Policy, but even if it did, which is denied, any such breach did not proximately, legally, or foreseeably cause Bentley to sustain any damages.

21.   *Accord and satisfaction.* Atlantic Casualty would assert in the event it is found liable to Bentley, any such liability being expressly denied, the affirmative defenses of accord and satisfaction, release, payment, credit, offset, res judicata, collateral estoppel, statute of limitations, waiver, and laches are asserted.

22.   *Lack of insurable interest.* To the extent Bentley either did not own the insured property or had no insurable interest in the insured property at the time of the claimed loss, there is no right to compensation regardless of the cause of loss.

23.   The Policy provides that Atlantic Casualty may make inspections at any time (form IL 0017 11 98).

24.   Atlantic Casualty pleads that Bentley had a duty to preserve all evidence, including electronically stored communications with any appraiser, umpire or expert.

25.   *Failure to mitigate*. Bentley failed to mitigate its damages.

26.   Atlantic Casualty pleads concurrent causation and late notice. The anti-concurrent causation doctrine bars recovery for damages because the damage was caused by a combination of covered and uncovered perils and pre-existing damage or damage after the Policy ended.  A damaged, rotten or deteriorated roof that pre-existed the Policy is not a fortuitous loss.

27.   If the Property has been sold there is an insurable interest defense. Replacement cost value is not owed if not replaced.

28.   The appraisal awards are the result of fraud, accident, or mistake  and are not valid. The appraiser for Bentley improperly and unilaterally altered the awards. The appraiser for Bentley wrote on the awards without the umpire's knowledge. The awards suffer from

mistakes of fact and mistakes of judgment such that the errors resulting in the award are so great as to be indicative of gross partiality, undue influence, or corruption. The awards are invalid and based on mistake.

29.   The appraisal awards are based on information that was lost or destroyed or not provided to Atlantic Casualty. The awards contained no information as to the basis for the amounts awarded and to what damage they corresponded.

30.   Atlantic Casualty pleads payment because it has paid all covered damage and has paid all portions of any potentially covered claim.

31.   The Policy contains an exclusion for Ordinance Or Law that states:

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a. Ordinance Or Law**

    The enforcement of or compliance with any ordinance or law:

    (1) Regulating the construction, use or repair of any property; or

    (2) Requiring the tearing down of any property including the cost of removing its debris. This exclusion, Ordinance Or Law, applies whether the loss results from:

        (a) An ordinance or law that is enforced even if the property has not been damaged; or

        (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

        CP 10 20 10 12

32.   Long term water damage or loss caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more is not covered.

33.   Atlantic Casualty reserves the right to assert other defenses as additional facts are revealed during discovery.

## III.
## CONCLUSION & PRAYER FOR RELIEF

For these reasons, Atlantic Casualty respectfully requests that the Court dismiss Bentley's claims against Atlantic Casualty with prejudice.  And because one or more Policy terms, exclusions, or endorsements bar coverage for the claims asserted by Bentley, Atlantic Casualty prays that the Court (1) declare that no coverage obligation is owed by Atlantic Casualty for the claims asserted by Bentley; (2) award Atlantic Casualty its court costs; and (3) award Atlantic Casualty all relief at law or in equity to which it may be entitled.

Respectfully submitted.

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, LLP

Camille Johnson
State Bar No. 10686600
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Tel: (214) 368-1515
Fax: (214) 292-9647
camille@ssjmlaw.com
**Counsel for Defendant Atlantic Casualty Insurance Company**

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing on April 26, 2023 with the Clerk of Court via the Court's CM/ECF System, which will send notification to all counsel of record.

Benjamin Doyle
STOCKARD, JOHNSTON, BROWN, NETARDUS & DOYLE, P.C.
P.O. Box 3280
Amarillo, Texas 79116
**Counsel for Plaintiff Bentley Land Holdings, LLC**

_____
Camille Johnson